**FIMEX CORP., Plaintiff,**

v.

**BARMATIC PRODUCTS CO., Defendant.**

**No. 76 C 2021.**

United States District Court,
E. D. New York.

April 14, 1977.

Julien & Schlesinger, P.C. by David Jaroslawicz, New York City, for plaintiff.

Barnes, Richardson & Colburn, New York City by Edward F. Christopher, New York City, of counsel, and Arent, Fox, Kintner,

logically deserve them but for countervailing policy considerations of judicial economy.

Plotkin & Kahn, Washington, D.C. by Salvatore A. Romano, Washington, D.C., of counsel, for defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Fimex Corporation ("Fimex") is suing Barmatic Products Company ("Barmatic") for discriminatory pricing in violation of the Robinson-Patman Act, 15 U.S.C. § 13(a).

The defendant Barmatic has moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment or, in the alternative, pursuant to Rule 12(b)(6) to dismiss the complaint on the grounds that the Robinson-Patman Act does not cover goods sold for export and that all the goods the defendant sold to the plaintiff were for export.

Barmatic is an Ohio corporation which manufactures automobile parts. Fimex is a New York corporation which distributes automobile parts in the United States and abroad, and which, since about 1960, has purchased some of its parts from Barmatic. The plaintiff alleges that the defendant charged him a higher price than the defendant charged other customers purchasing the same products. The defendant alleges that all the sales to the plaintiff were sold for export.

### I

The first issue raised by this case is whether the Robinson-Patman Act covers goods sold for export. That Act states (15 U.S.C. § 13(a)):

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States . . ."

That statute clearly states that to be covered the commodities must be sold "for use, consumption, or resale within the United States". Thus, if all the sales between the defendant and the plaintiff were for resale abroad, this statute is inapplicable.

The plaintiff argues that "the Robinson-Patman Act prohibits discrimination in prices between persons within the United States even if those persons purchased goods for export."

On this point we quote Congressman Patman, co-author of the Act, in his book entitled *The Robinson-Patman Act,* at p. 208 (1938), (quoted in *Baysoy v. Jessop Steel Co.,* 90 F.Supp. 303, 305 (W.D.Pa.1950)):

"Therefore, in applying the Act to export sales, it is evident that no limit or regulation of price discrimination in such sales is intended, unless goods involved in such transactions are resold for use, consumption, or resale in any place under the jurisdiction of the United States. *It is likewise apparent that the parties to any sales transaction, regardless of where the parties are located,* are not subject to the price-discrimination provisions of the Act, unless such goods are sold for resale in, or are to be used or consumed in, any place under the jurisdiction of the United States." (Emphasis added)

That quotation makes it clear that the focus of the Act is on where the goods are going, not on where the parties involved are located. This conclusion is supported by the leading case interpreting this section, *Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.,* 402 F.Supp. 244 (E.D.Pa.), pet. denied, 521 F.2d 1399 (3d Cir. 1975). In that case the defendant was selling televisions at one price in Japan and at another in the United States. The Court held (402 F.Supp. at 248):

"The 'use, consumption, or resale' clause makes it equally clear that the commodities involved must eventually reach the United States. Hence, no cause of action arises under the Act unless both commodities involved in the alleged price discrimination are 'sold for use, consumption, or resale within the United States.' That, of course, is not the case here, for

one 'leg' of the price discrimination alleged by plaintiffs involves commodities that are 'sold for use, consumption, or resale,' not within the United States, but within a foreign country, Japan. I conclude therefore that on its face the statute does not reach the transactions alleged here."

We hold, therefore, that if all the sales by Barmatic to Fimex were for resale abroad, the Robinson-Patman Act does not apply regardless of the location of the plaintiff or the defendant.

## II

The second issue in this case is, were all the Barmatic sales to Fimex for resale abroad and is there a genuine issue of fact on that question? As the original affidavits did not adequately address that question, this Court ordered the deposition of one of the officers of the plaintiff, Mr. Isaac Cohen, in order to fully develop the factual record.

At Mr. Cohen's deposition it was revealed that the only evidence the plaintiff had of sales from Barmatic to Fimex were twenty-six folders which contained invoices, bills of lading and purchase orders. (Transcript pp. 30–33).

Furthermore, Mr. Cohen made it clear in the following exchange that none of Barmatic sales to Fimex were sold in the United States. (Transcript p. 52).

Q Getting back to those 26 folders, were you able to find any evidence in your records of a sale by Fimex of products purchased from Barmatic to a customer in the United States?

A No, sir.

Q Did you look hard for it?

A Yes, sir.

Q You spent a great deal of time trying to find one?

A I spent days.

Q You couldn't find one?

A No, sir.

Q So as best as you can determine, based on your search, none of the products that you purchased from Barmatic was sold to customers in the United States; is that correct?

A No, sir.

Q No, sir, what?

A No, none of the products were sold in the United States.

Q They were all exported?

A Or else they are still in my warehouse.

Further, the plaintiff in his Supplemental Affidavit in Opposition at p. 4 concedes that no actual resales of Barmatic products were made in the United States, but argues that this fact is not conclusive here. It is the plaintiff's position that the record does not establish that at the time the plaintiff purchased the automobile parts from the defendant these parts were intended for export. In other words, the plaintiff argues that he would have sold here and in fact tried to sell here but failed because the defendant's prices were inflated, and therefore was forced to resell the goods abroad.

This argument raises the question of the meaning of words "sold for . . . resale within the United States". The Supreme Court has noted that "precision of expression is not an outstanding characteristic of the Robinson-Patman Act," *Automatic Canteen Co. of America v. F.T.C.,* 346 U.S. 61, 65, 73 S.Ct. 1007, 1020, 97 L.Ed. 1454 (1953), and in conformity with that the above quoted section of the Act lends itself to at least three possible interpretations. First, that section could mean that the seller's intent is controlling. In other words, did the seller intend the goods for resale within the United States? Second, the focus of the Act could be on the buyer's intent, and third, the focus of the Act could be the objective standard of where the goods were in fact resold.

In *Zenith Radio, supra,* at 248, the Court seemed to indicate that the third test is correct when it said that the " 'use, consumption, or resale' clause makes it equally clear that the commodities involved must eventually reach the United States."

In any case, the fact that the plaintiff and defendant engaged in a series of trans-

actions over a number of years and all the goods were consistently exported is strong evidence that both sides intended the goods for export. The only exception to that statement is that the plaintiff does have 500 tie rods from the defendant still in its warehouse. However, the purchase order identified by Mr. Cohen covering those tie rods (Cohen Deposition Exhibit 4) states that Fimex wanted the order marked "FI-MEX OTO ISTANBUL", and so as to those goods Barmatic cannot be faulted for assuming the goods were for export. As to the other goods, no purchase orders were provided, but there is no dispute that all other Barmatic sales were exported.

■ Therefore, in order for this plaintiff to have a cause of action we must find that the test under the Act is the buyer's intent, and that in this case Fimex bought some Barmatic products with the (apparently undisclosed) original intent of selling them in the United States, but on failing in that, sold them abroad.

If a buyer's intent test, particularly an undisclosed one, were to be read into the Act, it would be an easy matter for every buyer which (as has been the case with the plaintiff) traditionally purchased for export to place a seller in jeopardy of a suit such as this by submitting on occasion orders to a seller for items which the buyer subsequently claims were for the domestic market. In short, this would make the Act a real trap for the unwary and subject sellers to liability which might only be said to be clearly undeserved. In simple fairness this Court does not feel that any such inequitable result was ever intended and hence concludes that no such test is applicable.

Assuming *arguendo,* however, that another court might disagree, this Court is convinced that the facts in this case do not warrant its application here.

The only evidence the plaintiff presents in support of this somewhat tenuous position is Mr. Cohen's original affidavit where he states that he did purchase tie-rods for resale in the United States and did try to resell tie-rods in the United States. In this connection the mere assertion by an officer of the plaintiff of attempts to resell domestically was clearly insufficient on this motion.

■ Therefore, in order to fully develop the facts in conformity with Rule 56(f) of the Federal Rules of Civil Procedure, this Court ordered the deposition of Mr. Cohen. At that deposition no questions were asked regarding any attempts to resell Barmatic products in the United States. The plaintiff's attorney at the deposition argued that it was the defendant's obligation to ask such questions, but when the plaintiff raised this point at oral argument, this Court offered the plaintiff a *second* opportunity to depose Mr. Cohen and develop any relevant facts. The plaintiff refused this offer, and so this Court must decide this motion on the record before it.

Therefore, on this record we hold that if the correct test under the Robinson-Patman Act is the objective standard of where the goods were actually resold, then as the plaintiff has conceded that none of the goods were resold here, summary judgment must be granted.

Alternatively, the correct test may be that the seller can rely on where the buyer customarily resells his goods absent some express notice given to the contrary with respect to particular purchases. If this is the test, then as Fimex's custom was clearly to resell Barmatic products abroad where all those products were resold, and as Fimex has produced no evidence of any notice to Barmatic that it intended to resell any particular order here, then summary judgment must again be granted.

The third possible test is that buyer's intent governs and that the buyer does not have to communicate such intent to the seller. We have stated that such a test would be unfair and should not be read into the Act, but even assuming that it is applicable, we hold that the plaintiff has not presented specific facts showing that there is a genuine issue of fact for trial.

The defendant's motion for summary judgment is granted with costs.

SO ORDERED.